IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELSHEIKH HASSAN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 06-3711 |
| | : | |
| **NORTHWESTERN HUMAN SERVICES** | : | |
| | : | |
| | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                     **February   12, 2007**

      Plaintiff Elsheikh Hassan ("Plaintiff") brings this action against Defendant Northwestern Human Services ("Defendant") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. §1981 ("Section 1981");[1] and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, et seq. ("PHRA").  Currently before the Court is Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  In the alternative, Defendant seeks a more definite statement on certain counts of the Complaint pursuant to Federal Rule of Civil Procedure 12(e).[2]  For the reasons stated below, the Motion will be granted in part and denied in part.

---

[1] Plaintiff's Complaint alleges that he is seeking relief under 29 U.S.C. § 1981. Since Plaintiff's allegations all pertain to discrimination and the cited statutory provision does not exist, the Court will assume that he is seeking relief under 42 U.S.C. §1981.

[2] Even on those Counts for which Defendant has not formally expressed the need for a more definite statement, the Court has the discretion to order a more definite statement so as to facilitate the early resolution of issues and avoid the wasting of judicial resources.  See Thomas v. Independence Township, 463 F.3d 285, 301 (3d Cir. 2006).

1

**I. BACKGROUND**

Accepting as true the allegations of the Complaint, as the Court must at this stage of the proceedings, the pertinent facts are as follows:  Plaintiff is an "African-born" legal resident of the United States with a discernable accent.  Compl. ¶¶ 3, 7.  He is also a practicing Muslim who regularly takes prayer breaks during the day.  Id. at ¶ 8.  At all times relevant to this action, Plaintiff, as a legal resident of the United States, was eligible for employment under all relevant state and federal laws.  Id. at ¶ 9.

Plaintiff began working for Defendant in February 2000 as a Therapeutic Staff Support Counselor ("TSS Counselor").  Id. at ¶ 10.  As a TSS Counselor, Defendant worked in the homes of his assigned clients to implement and supervise behavior modification treatment plans that were individualized to fit their needs.  Id. at ¶¶ 11, 12.  He was supervised by a Behavioral Services Consultant.  Id. at ¶ 12.  In January 2003, Defendant hired Rhonda Matlock as Program Director of its Behavioral Health Program.  Id. at ¶ 16.  In that position, she made the final decision as to which TSS Counselors would be assigned to particular cases.  Id. at ¶ 18.

From February 2000 to September 2004, Plaintiff worked 40 hours a week, primarily on evenings and weekends.  Id. at ¶ 13.  Shortly after he began working for Defendant in 2000, Plaintiff was assigned to work principally with one particular client, "J.W."  Id. at ¶ 14.  In 2000 and 2001, he was also given other short term assignments.  Id.  In June 2004, Plaintiff lost his daytime job and made several requests to Defendant, both orally and in writing, to be assigned additional hours.  Id. at ¶ 17.  He told Defendant that he was available to work days, evenings, and weekends, but never received additional assignments.  Id. at ¶¶ 17, 19.

In September 2004, J.W. moved and Plaintiff's assignment with him ended.  Id. at ¶ 20.

Plaintiff contacted Matlock who instructed him to submit a "Request for Hours" form. Id. at ¶ 21. After he submitted the form, Plaintiff was told that he would be given another assignment. Id. at ¶ 22. Plaintiff believes that assignments were given to "non-African" employees instead. Id. at ¶ 23. Throughout the remainder of 2004 and into 2005, Plaintiff continued to contact Matlock and other managers regarding a new assignment, but was told each time that there were no assignments available for him and that he would be contacted if one became available. Id. at ¶¶ 24-26, 34. Between September 2004 and June 2005, Defendant never contacted him regarding a new assignment. Id. at ¶ 28.

Plaintiff applied for unemployment benefits in June 2005. Id. at ¶ 27. Defendant opposed this application on the grounds that Plaintiff had quit voluntarily. Id. at ¶ 30. The Unemployment Compensation Bureau denied Plaintiff's claim for benefits. Id. He then appealed to the Unemployment Compensation Appeals Board of Review, which determined that he had not quit, but rather had been effectively laid-off because he had not received any new assignments since September 2004. Id. at ¶ 33.

Plaintiff contends that from the time he was hired in 2000 until the time Matlock was hired in February 2003, there were at least 15 "African-born" TSS counselors who worked in his program. Id. at ¶¶ 36, 37. By September 2004, most of the "African-born" employees had been terminated. Id. at ¶ 37. Plaintiff believes that Defendant had work available for which he was qualified, but that "non-African born" employees were assigned to that work because Defendant had a pattern and practice of "selectively terminating African-born employees" by not assigning them work. Id. at ¶ 40. The overall effect was to eliminate all but a few "African-born" employees. Id. at ¶ 41.

On September 24, 2005, Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC") for discrimination on the basis of national origin and religion, and for retaliation in response to his complaints of discrimination. Id. at ¶ 6; Exhibit A to Defendant's Motion to Dismiss ("Mot.").[3] Plaintiff brought this action on August 21, 2006. Subsequently, Defendant filed the instant Motion to Dismiss, or in the alternative, for a more definitive statement.

## II.  LEGAL STANDARD

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts provable by plaintiff. See Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

Rule 12(e) states in relevant part: "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a

---

[3] Neither party specifically states whether Plaintiff received a "Right to Sue" letter with respect to his EEOC and PHRC charges. However, Plaintiff alleges that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled" (Compl. ¶ 6), and Defendant has not suggested otherwise. Accordingly, for purposes of this Motion, the Court will assume that Plaintiff received a "Right to Sue" letter with respect to the allegations in his EEOC and PHRC charges.

responsive pleading." Fed. R. Civ. P. 12(e); see also Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 798 (3d Cir. 1967) (stating that a motion for a more definite statement is appropriate in "the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading").

### III. ANALYSIS

Defendant first argues that Plaintiff's claims under Title VII and the PHRA (Counts I and III, respectively) are barred by the filing time limits contained in those statutes. Second, Defendant argues that even if Plaintiff's claims in Counts I and III are timely, he should not be allowed to proceed on any claims that are based on religious discrimination because the Complaint does not set forth how his religion played a role in the alleged discrimination. Finally, Defendant contends that Plaintiff's Section 1981 claim (Count II) should be dismissed because it alleges discrimination solely on the basis of national origin, which is not covered under Section 1981.[4] In the alternative, Defendant seeks a more definite statement with respect to the allegations in Plaintiff's Complaint.

### A. Statutory Time Period for Filing

Defendant seeks to dismiss Plaintiff's claims under Title VII and the PHRA (Counts I and III, respectively) on the grounds that these claims were not filed with the EEOC within 300 days after the occurrence of the alleged discrimination. Under Title VII, when a charge of employment discrimination has been filed with the appropriate state agency, it must also be filed

---

[4] Defendant also argues that Plaintiff has failed to plead sufficiently any viable class action claims, and that, therefore, all class allegations in the Complaint should be dismissed. See Mot. at 21. In his Response, Plaintiff denies that he is making any class action claims, and that to the extent there appear to be any, he withdraws them. See Plaintiff's Response to Defendant's Motion to Dismiss ("Resp.") at 1, n.1.

with the EEOC within 300 days "after the alleged unlawful employment practice occurred."[5] 42 U.S.C. § 2000e-5(e)(1); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Timely filing with the EEOC is a prerequisite to a civil suit under Title VII. Morgan, 536 U.S. at 120; Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974).

The time period for filing an EEOC charge begins to run as soon as a potential claimant either is aware or should have been aware of the existence of and source of an injury. See Oshiver v. Leven, Fishbein, Sedran, & Burman, 38 F.3d 1380, 1385-87 (3d Cir. 1994). If the plaintiff has difficulty identifying precisely when the allegedly illegal conduct occurred or if a violation is continuous and ongoing, the filing requirement is subject to equitable tolling. Gaul v. Zep Mfg Co., 2004 WL 234370, at *2 (E.D. Pa. Jan. 30, 2004); Zipes v. Transworld Airways, Inc., 455 U.S. 385, 393 (1982). Equitable tolling may be appropriate where (1) the defendant has actively misled the plaintiff respecting his or her cause of action; (2) the plaintiff in some extraordinary way was prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Hanani v. State of New Jersey Dep't of Envtl Prot., 2006 WL 3246507, at *5 (3d Cir. Nov. 9, 2006) (citing Oshiver, 38 F.3d at 1387).

Defendant's Motion argues that its failure to assign Plaintiff a new client was a discrete act ending his employment, and therefore, that Plaintiff's period for filing an EEOC charge commenced when the client he had been providing TSS Counselor services moved away, i.e., September 14, 2004. See Mot. at 8-9. Moreover, Defendant argues, Plaintiff's repeated requests for a new assignment were merely demands for reinstatement of his employment and could not

---

[5] Pennsylvania is a deferral state, extending the time for filing a charge with the EEOC from 180 days, as prescribed by the statute, to 300 days. Colgan v. Fisher Scientific Co., 935 F.2d. 1407, 1413-15 (3d Cir. 1991).

restart the time period for filing.  See id. at 11-13.  Further, Defendant contends that the continuing violation theory does not save Plaintiff's claims because he understood as far back as January 2003 that Defendant allegedly discriminated against "African-born" employees.  See id. at 14.  Thus, Plaintiff's failure to file a charge until September 2005 was outside the 300 day limit, and his Title VII and PHRA claims should be dismissed.  Id. at 9.

At this stage of the litigation, dismissal of Plaintiff's Title VII and PHRA claims as untimely would not be appropriate.  Plaintiff's Complaint alleges that after his principle client moved in September 2004, he was told to submit a "Request for Hours" form and then was told that he would be given another assignment.  See Compl. at ¶¶ 21, 22.  Thus, drawing all inferences in Plaintiff's favor, from the time his primary client left until at least the time he inquired as to why he was not given the promised assignment, he had no reason to believe that he either had been terminated or subjected to discrimination.  Indeed, he was actively misled by the Defendant.

Plaintiff further alleges that he continued to request work from Defendant until he filed for unemployment benefits in June 2005.  See  Compl. ¶¶ 24-27.  Reading these allegations in the light most favorable to Plaintiff, he was unaware that he had been terminated or discriminated against until June 2005.  Accordingly, the Title VII and the PHRA claims will not be dismissed on timeliness grounds.

**B.     Allegations of Religious Discrimination Under Title VII and the PHRA**

Plaintiff alleges in his Complaint that he was subjected to religious discrimination in violation of Title VII (Count I) and the PHRA (Count III).  See Compl. ¶¶ 47, 51.  Defendant contends that these claims should be dismissed because Plaintiff "does not establish how his religion played any part" in the alleged discrimination against him.  See Mot. at 19.  Plaintiff's Response does not directly address this argument but rather asserts in a footnote that since Defendant was on "enough notice" to seek to have the religious discrimination claims dismissed, he has alleged these claims sufficiently under the liberal pleading standard.  See Resp. at 8, n.5.

Title VII and the PHRA make it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of religion.  See 42 U.S.C. § 2000e-2(a); 43 Pa. Cons. Stat. § 955(a).  The two acts are substantially similar, and Pennsylvania courts generally interpret the PHRA consistent with Title VII.  See Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001) ("The proper analysis under Title VII and the [PHRA] is identical as Pennsylvania courts have construed the two acts interchangeably").  Therefore, the Court will analyze Plaintiff's religious discrimination claims under Title VII, and the conclusions will apply equally to his claims of religious discrimination under the PHRA.

Employees may assert two different theories of religious discrimination under Title VII: disparate treatment and failure to accommodate.  See Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 281 (3d Cir. 2001).  In the instant case, Plaintiff has not alleged that Defendant failed to accommodate his religious beliefs, and in fact, he expressly acknowledges that he regularly took prayer breaks during work-related events.  See Compl. ¶ 8.  Therefore, it

appears that Plaintiff intends to proceed under a disparate treatment theory of religious discrimination.

In order to set forth a prima facie disparate treatment claim under Title VII, Plaintiff must allege that (1) he is a member of a protected class, (2) he was qualified for his position and suffered an adverse employment action, and (3) nonmembers of the protected class were treated more favorably.  Abramson, 260 F.3d at 281-82.  As a Muslim, Plaintiff is a member of a protected class.  See Davis v. Mother Works, Inc., 2005 WL 1863211, at *7 (E.D. Pa. Aug. 4, 2005).  Plaintiff contends that Defendant had work assignments available for which he was qualified and that the discriminatory practices he alleges in his Complaint had the effect of depriving him of "employment opportunities and otherwise [affecting] adversely his status as an employee because of his national origin and religion."  Compl. ¶ 38, 42.  Plaintiff has not, however, alleged that non-Muslim employees were treated more favorably than he.  Rather, Plaintiff has alleged that "non-African born" employees were treated more favorably.  See Compl. ¶¶ 23, 37, 38, 39, 40, 41.  Therefore, Plaintiff has failed to set forth the third element of a prima facie case.  Since Plaintiff has sought leave to amend his Complaint to the extent any of his claims are not adequately supported by the pleadings, the Court will grant him leave to file a more definite statement of his religious discrimination claims if he responsibly can do so.[6]

---

[6] Defendant argues in its Reply that Plaintiff asserted three new claims in his Response: (1) retaliation, (2) abuse of process, and (3) hostile work environment.  See Defendant's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint.  The Court will not address these claims other than to note that they were not alleged in the Complaint, and thus, are not currently pending before the Court.  See The Sansom Committee v. Lynn, 366 F.Supp. 1271, 1278 (E.D. Pa. 1973).

### C. Allegations of National Origin Discrimination Under 42 U.S.C. § 1981

Section 1981 prohibits discrimination on the basis of race.  <u>See</u> 42 U.S.C. § 1981;[7] <u>see also, e.g.</u>, <u>St. Francis College v. Al-Kharaji</u>, 481 U.S. 604, 609 (1987).  Plaintiff, however, alleges in Count II of his Complaint that he has been subjected to discrimination in violation of Section 1981 "because of his national origin."  Compl. ¶ 49.  Defendant argues that Count II must be dismissed because a Section 1981 claim cannot be based solely on national origin.  <u>See</u> Mot. at 17.

In <u>St. Francis v. Al-Khazraji</u>, the Supreme Court examined the history of Section 1981 and concluded that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."  <u>St. Francis</u>, 481 U.S. at 613.  The Court noted with approval the Third Circuit's holding that Section 1981 "at a minimum reaches discrimination against an individual because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens."  <u>Id.</u> (internal quotations omitted).  However, the Court also emphasized that a plaintiff's claim must allege something more than just discrimination on the basis of the "place or nation of his origin" in order to set forth a viable cause of action under Section 1981.  <u>Id.</u>; <u>see also</u>,

---

[7]  Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes licenses, and to exactions of every kind, and to no other.

Schouten v. CSX Transp., Inc., 58 F. Supp. 2d 614, 618 (E.D. Pa. 1999) ("Section 1981, however, does not bar discrimination purely on the basis of national origin").

In the instant case, the Complaint asserts that Defendant discriminated against Plaintiff because he was "African-born." See, e.g., Compl. ¶ 3 ("Plaintiff Elsheikh Hassan is an African-born legal resident of the United States of America"); ¶ 7 ("Hassan was born in Africa and has a discernable accent"); ¶ 35 ("NHS's attempt to deny him Unemployment Benefits was based upon NHS's discriminatory animus towards him because of his national origin..."); ¶ 38 ("Hassan is informed and believes and thereupon alleges that work was available at NHS for which he was qualified, but other non-African-born employees were assigned to the available work."); ¶ 42 ("The effect of the practices complained about above has been to deprive Hassan of employment opportunities and otherwise affect adversely his status as an employee because of his national origin..."). Count II specifically alleges that Defendant violated Section 1981 by "discriminating against Plaintiff because of his national origin." Compl. ¶ 49.

Plaintiff contends that his Section 1981 claim is not discrimination based upon "the mere happenstance of his birth in an African country," but rather "precisely the sort of ethnic, cultural discrimination intended to be prohibited by § 1981." Response at 18. However, as the allegations in his Complaint currently are framed, Plaintiff has not alleged discrimination on the basis of any factor (e.g., his ethnicity, race, or skin color) other than his place of origin. See, e.g., Beaubraun v. Inter Cultural Family, 2006 WL 1997371, at *5 (E.D. Pa. July 13, 2006) ("[T]he complaint does not allege that Defendants discriminated against [Plaintiff] because of her race or her skin color. The fact that Plaintiff uses the phrase 'of Haitian descent' appears to be merely another method of describing her national origin."). Plaintiff's Response requests the

11

opportunity to add additional factual allegations to his Complaint if the Court finds that any of his claims are not adequately supported by the pleadings.  See Response at 8.  The Court will allow Plaintiff the opportunity to file a more definite statement of his Section 1981 claim if he responsibly can do so.

### IV.    CONCLUSION

For the aforementioned reasons, the Court will allow Plaintiff to file an amended Complaint consistent with this Opinion within 30 days from the date hereof.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELSHEIKH HASSAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-3711 |
| | : | |
| NORTHWESTERN HUMAN SERVICES | : | |
| | : | |

**ORDER**

AND NOW, this 12th day of February, 2007, upon consideration of "Defendant Northwestern Human Services' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)" (docket no. 3), Plaintiff's Opposition thereto (docket no. 5), and Defendant's Reply (docket no. 6), it is **ORDERED** that Plaintiff shall file an amended Complaint consistent with the Court's Opinion within thirty (30) days from the date hereof.  It is **FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's Title VII and PHRA claims on timeliness grounds will be **DENIED**.

BY THE COURT:

/s/ Bruce w. Kauffman

BRUCE W. KAUFFMAN, J.